Good morning, Your Honors. My name is Keith Blankenship, and I represent the Plaintiff Appellants, VRCompliance LLC, and iStreet Solutions LLC. This is a case involving a mixed complaint of nondeclaratory claims and declaratory claims, and the lower court abstained from hearing the case under a standard that really only applies to frankly, I'm not sure that this case is anything other than Miles Lumber revisited, which is a former case in this court. First, some background. VRCompliance is an investigation company that offers access to investigation software to taxation agencies. iStreet Solutions created the software, and VRCompliance is the licensee of the software. VRCompliance's primary client is the state of Colorado, whose localities, like an Aspen or a Breckenridge, use the software to investigate taxation. And they do so pursuant to state statutes like Colorado State Statute 39-5, 108.5, which commands, not gives permission, but actually commands localities to investigate short-term residence rentals for purposes of taxation. Homeaway provides web pages that list residences available for short-term rental. In fact, they're the largest such provider. Now, Homeaway took umbrage with the investigations and sent cease and desist letters to the localities demanding they cease any investigation that includes data from Homeaway websites. Homeaway demanded that VRCompliance surrender its investigation results by October 5 or be sued. So VRCompliance sued Homeaway on October 6, but Homeaway sued VRCompliance in a Texas court on October 3. So why is this in state court? It really doesn't track the language of the cease and desist letters that went out to localities. Cease and desist letters talk of federal crimes, like the Computer Fraud and Abuse Act, and things like copyright infringement, these federal claims. Naturally, these claims were not brought in the Texas state court, but these claims need to be heard, perhaps more presently than the other claims, because of the nature of the threat. Homeaway in its cease and desist letters attempted to threaten the state of Colorado for performing investigations, and violations of Texas statutes thrown before the state of Colorado just don't have the same interorum effect that federal violations do. And this leads us into one of the first curious statements made by the lower court in stating this case, that the Texas state suit is broader because it includes an additional party and includes additional relief. Well, a quick update, it doesn't include that additional party anymore. You may have noticed that Homeaway attempted to... Even the Moses Cone case, which a lot of people rely on in these kinds of situations, indicates that a stay is not a mechanical kind of matter. I mean, even if the exceptional circumstances test were to apply, Moses Cone says, okay, it may not be a difference between a stay and a dismissal, but a stay is not a mechanical matter. And then, after Moses Cone, you get a Wilton, which specifically addresses the question of a parallel state suit. And it says, no, it's a unanimous decision of the Supreme Court, and they said, no, the exceptional circumstances test doesn't apply, that there's an abuse of discretion standard, which Judge Duncan and I were both on the panel in this Riley v. Dozier case. We picked up on Wilton in the context of declaratory claims. But why isn't this just a straightforward application of Wilton? In other words, it's probably a weaker case for overturning the district court in Wilton than in Wilton, because in Wilton, the Texas district judge stayed an action pending the resolution of a later filed state court suit. And in this case, you have an earlier filed state court suit. I'm not sure I would have stayed it. I might have, I might have not. I can see good reasons to do so. But, I mean, doesn't the standard of review come into play here in light of Wilton? Well, yes, the standard of review, we would argue, is Colorado River. In Wilton and Riley, all of the claims involved declaratory claims. Riley, declaratory claims, purely declaratory claims, asking for declarations that, for example, Riley, the plaintiff asked for a declaration that it was not a trademark infringer, and it asked for a declaration that it was not committing defamation. I don't understand what difference it makes whether it's a declaratory, purely declaratory, or whether it's mixed, because you've got a lot of circuits out there saying that Wilton applies to mixed declaratory, non-declaratory claims. And the mixed claims, the non-declaratory claims, in your case, happen to be Texas state law claims, which, in fact, were the subject of your own counterclaim in the Texas suit. So you're, I mean, if it was a mixed declaratory, non-declaratory case, and the mixed claims were actually federal claims, well, it might be a little different. But here, a number of circuits do apply Wilton to the mixed situation, and why should we decline to apply Wilton when the mixed claims are not only, the non-declaratory claims are not only state claims, Texas law claims, I guess, but they're the subject of your own counterclaim in the Texas suit? Well, Your Honor, they're only Texas claims in Texas because they're in a Texas court, is the pragmatic answer to that. In the Virginia case, we're suing under the Virginia Consumer Protection Act, and all of the interference with prospective business relations type of torts, these are Virginia claims as well. And, you know, when there is multi litigation in multiple districts, when will this mirroring not happen? In Texas, we brought our counterclaims like we have our Virginia claims because we were afraid we would lose them. I certainly expect that Home Away is going to do the exact same thing, lest they lose them. Given the overlap, I'm just wondering how we can reverse a district court for abuse of discretion. Well, Your Honor, this court has never applied Brilhart-Wilton to non-declaratory claims. In Miles Lumber, you refused to do it. But you just say you want a mechanical rule that if it's anything other than that, that we don't review for abuse of discretion, or that we say it's an abuse of discretion in a case that's not strictly the declaratory judgment, declaratory relief, that it has to be dealt with otherwise. Which approach are you taking? The latter, that it's an abuse of discretion, that it should be reviewed under the abuse of discretion standard. But you would just say that the ruling, we would just set down a hard and fast ruling, that if it's a mixed-question case, the court has to rule a certain way. Well, the court answers yes. The answer is yes, isn't it? Yes, certainly for non-declaratory claims. I think the court has. So it would be akin to our saying that in a mixed-question case, no matter how you analyze the case, District Court, even if it was 99% declaratory relief, if there was any substantive relief, you would have to, as a matter of law, forget your abuse of discretion and do it as if it were purely declaratory relief. Or otherwise. Otherwise. Is that right? Yes. But it's not necessarily a question of because there is one non-declaratory claim that it... Because there has to be a basis for us to say that the court abused its discretion, correct? That's correct. And that basis under your analysis would be we would establish a hard and fast rule that if there was any portion of mixed, it had to be treated a certain way, and the court couldn't analyze the case below to see what the case really was about. Well, I would suggest that the analysis, the hard and fast rule, should be Colorado River, which then lets you look at what the case is about. But even Moses Cone and Colorado River don't go as far as a hard and fast rule, and I would point out that Wilton came after Colorado River and Moses Cone, but they do stress that the relationship between state and federal courts, you know, there has to be some play for comedy. There has to be some room for play in the joint. I'm wondering if you're not just asking us essentially to mandamus a district judge in a case which has a significant declaratory element. And, I mean, we state cases all the time, and we await rulings of a state court sometimes, or we await rulings of a federal, of a U.S. Supreme Court, or whatever. In other words, you're in a situation where there are always other actors in the system. There are other courts, there are Congress, et cetera, and a district court faced with all these different actors in the system has got to have just a little room in not being essentially mandamus under your rule for entering a statute. And the Wilton court, and there is a major part of this is a declaratory judgment action, and the court, Justice O'Connor goes out of her way to say district court's assumption of jurisdiction is not automatic or obligatory. Federal courts should adjudicate claims within their jurisdiction. It's talking about considerations of practicality and wise judicial administration. And even Moses Cone talks about practicality and wise judicial administration. I don't think we've tried to straitjacket trial court management techniques. Well, comedy is certainly very important, but at the same time, when you have a federal case that involves questions of copyright infringement. But the point is in the state case, nobody ever accused you of violating the Copyright Act or the CF&A Act. And even what Judge O'Grady thought was that even the federal claims had a factual component that was going to be developed in state court. It can't just kind of resolve the federal claims in thin air. You have to know factually whether the HomeAway website was accessed and what use was made of the materials and what distribution was made of the materials and all sorts of that. And I suppose the district court says, well, I don't want the meter running in two different courts on this question at the same time. Could that be an abuse of discretion? Well, the short answer to that is because the Virginia case has the capacity to resolve all of the issues, whereas the Texas court does not. The Texas court can't touch the copyright claims. It would be more efficient for the Virginia court to proceed while, for example, the Texas court might stay and wait for the Virginia court to... We don't know whether the Texas court would stay or whether it wouldn't. You know, that's purely speculative on your part. That's true, but it's not uncommon to have two litigations running at the same time. It's just it's not something that's necessarily to be feared under these sorts of abstention doctrines. But it's not necessarily something to be encouraged either, is it? Well, that's true. Maybe that's where the abuse of discretion standard lies. But I want to be sure I'm following your argument. I think I am. But doesn't your argument open the door to some kind of manipulation by some form of law? I'm sorry, what was the last part? Open the door for manipulation by some form of artful pleading. Under your rule, you would just, not that you would do it, but one would just include one tiny claim that then, under your rule, would necessarily tie the hands of what the district court would do. I think that's the sort of thing that could be analyzed under the Colorado River standard. It's not as though once somebody pleads a nondeclaratory claim that the game is over and the court must take it. There is still a rubric. You have a boilerplate federal copyright claim because it's exclusive jurisdiction, and there the district court's hands are tied. But you keep wanting to ignore the case that the Supreme Court decided unanimously. Well, Justice Breyer was recused, but it was an 8-0 vote. And it dealt with specifically this question of a parallel state proceeding. And part of it is it wanted a framework of federal state jurisdiction to be framed by the face of the complaint rule and the removal statute. And a plaintiff is master of his complaint. In this case, it included purely Texas state law claims. If you want a federal forum, Congress has provided that in the removal statute. And if you can remove this case to a federal forum, fine. And if there's an absence of personal jurisdiction somewhere, fine. But the whole question is whether you play by the rules of the game. And I acknowledge that I'm out of time. Is it appropriate for me to answer that? I'm perfectly happy to hear from you on rebuttal. Okay. Certainly. Good morning, Your Honors, and may it please the court. My name is Adam Kessel, and I represent the Applee Homeaway. And I may not have much to say based on the questions from my brother, but I'll start by saying here the trial court was presented with a complaint, a series of declaratory claims, followed by several state law claims, all of which depended on the result of the declaratory claims. Moreover, all of those state law claims were also filed by the appellant here in state court in Texas. Beyond that, the appellant... They were the subject of counterclaims. They were filed as counterclaims in Texas state court. In addition to that, the appellant had two opportunities to avail itself of a federal forum. My client made it very clear that we would not contest removal. The motion that led to this appeal was filed before the time they could have removed. Also, they could have consented to the original relief that we were requesting in the lower court, which was transfer to the Western District Court. Did they ever try to remove the case at all? Excuse me? Did they try to remove the case? They did not try to remove the case, Your Honor, and we would not have opposed. We made that clear. What the district court did here was to... He treated the non-declaratory claims as kind of an afterthought to the declaratory claims. Is that the proper order in which to approach things? That is the order in which two members of this panel approached the case in Riley. It has been the approach of other circuits. I must correct my brother who said that no presidential opinion of this court has applied Brillhart-Wilton to a mixed case. That's not the case. In the New Wellington case in 2005, Judge Gregory wrote the opinion and applied Brillhart-Wilton to a mixed case. It doesn't come out in the opinion, but in the briefing of that case, the appellant was arguing for Colorado River, but the court, the Fourth Circuit, in a presidential opinion, applied Brillhart-Wilton to a mixed declaratory and non-declaratory claim. So the mixed claims all stayed? Mixed claims were all stayed. And really this is just an issue, I believe, of routine docket management. Your Honor pointed to Moses Cone, and of course the issues of comedy are present there. I'd also point out, I believe it was Justice Rehnquist's dissent in that case emphasized the district courts need to be able to manage a docket. I mean, even the majority opinion goes out and says Colorado River has an exceptional circumstance. But there's language in Moses Cone that says even this. And Moses Cone and Colorado River were a number of years before Wilton. And so the high watermark of this thing, we keep getting this exceptional circumstances sentence quoted to us from Colorado River. But even those cases indicate that the test can't simply be mechanical, that there just has to be a little bit of room for play in the joints. And then you have Wilton coming along. And as I say, Wilton was a much stronger case because the state suit was filed after the federal complaint in Wilton. Here, albeit three days, the state suit was filed before. The state suit was first in time. But Wilton, the state suit was filed afterwards. And the Texas district judge stays the federal proceedings. Gets upheld by the Fifth Circuit. The Supreme Court then unanimously opposes it, talking about the discretionary nature of declaratory relief and the fact that what they want, I guess, is something. I don't know what they want. But they want a Virginia forum, obviously, a Virginia federal forum. This is forum shopping, if I ever saw it. And I just don't think that Wilton or the post-Wilton development, where Wilton has been applied by a number of circuits to mixed claims, I just don't think the law is even there to essentially mandamus a district judge on a matter of trial management and docket management. That's precisely right, Your Honor. And I would point out that in both the Wilton cases and the Colorado River cases where abstention was found to be improper, I think invariably it related to the lack of overlap. There were different claims, different parties. In the great American case from 2006 from this circuit, the federal plaintiff wasn't even in the state case. Here we have all the same parties, all of the same claims except for the declaratory. What seemed curious to me about what the district court did here, and I understand all of the points that are being made very compellingly, I was curious that the district court applied the Brilhart-Wilton doctrine to declaratory judgment claims and then decided to reach out and append the non-declaratory judgment claim. That's right, and I think that was this court's approach in Riley. And another district court, Judge Hudson in Alpha Laval, followed the Riley approach, basically looked at whether the non-declaratory claims depended on the declaratory claims. And what outer circuit case law does that depended on analysis most resemble? Well, Your Honor, there are 11 different tests on this, the heart of the case, the independent existence. I don't have all the catch words. I have a list here, but I think it really goes closest to what they call the heart of the case analysis, which if I remember correctly is the 8th Circuit applies the heart of the action test. Frankly, Your Honors, I don't think it's necessary to come up with a test in this case because the facts, the overlap is so complete. You have the additional fact, which I wasn't able to find in any court, in any of the appellate decisions, where the federal plaintiff asserted the same claims affirmatively in the state court. I think that fact alone distinguishes this from all the other cases. Well, you do realize that whatever we do, it's going to become a test, whether we identify it as such or not. It will be cited as the Riley case, even though it was an unpublished decision, has been cited. So you like the heart of the action, heart of the case case, or this test has no name? I would not venture to offer this court a name for the test. It's the first time a lawyer doesn't want to offer some advice on the question in front of us. I leave that to the wisdom of the court. Well, your point is this one's an easy case because the state claims that were the subject of the federal complaint were actually advanced as counterclaims in the Texas case, and further, that the non-declaratory claims were all state claims, most of which were being resolved in the Texas action. I understand the language in Moses Cone about, well, we're not sure that a stay is different from a dismissal, but a stay is a milder thing. He's waiting. He's retaining jurisdiction. There is a footnote in Wilton, I believe, that a stay will often be preferable, and a number of decisions after that have approved a stay, because here, in the extremely unlikely event that the copyright issue remains live after the state court has concluded, they will get their day in court. They will get their federal forum. That claim is there. It stayed, and it's not going to be litigated in Texas. However, we believe the issue will be effectively mooted by other findings in that case. And the only other point I would add to why this is an easy case is the appellant's failure to avail itself of its opportunities for a federal forum, particularly through the removal statute, which was a salient factor in the Riley case. In that case, the appellant had tried to remove, it had been remanded that, of course, is not appealable, and so they tried to get in through a side door. Let me ask a question of you. Do you think that the result below was allowable under the abuse of discretion standard, or was it required under the abuse of discretion standard? I believe it was allowable. So if you had lost, there wouldn't have been an appeal to this problem? It's a counterfactual, but, you know, I... I just wonder, because it seems to me, whatever we call that test, we're going to be taking it a lot. Right. The next question I have for you is, this is just sort of more of a philosophical question, I guess. Maybe with a presentation of the case, do you think it would be proper for a lower court to take into account the realities of litigation and understand that a piece of, not complex, but not just everyday litigation solved in the state court by way of decision or a settlement might well cause the case in front of that judge to go away? I believe that would be encompassed in the test for practicality and wise judicial administration, which is really what this is all about. By the way, and that is a reality. It is not unusual for people to be sued in a lot of different places, and then there's something like a global settlement, or the parties work out... This, isn't it a fact in modern litigation, and maybe forever, that sometimes what's being settled in a lawsuit goes beyond the actual claims in the lawsuit. It could be emotional feelings. It can be future relationships, which certainly come out of litigation. You could sue one another and be business partners shortly thereafter, you don't know, like technology, one side has it, the other. But that's all part, in the real world, that sort of goes beyond any kind of mechanical rule looking at a pleading, doesn't it? That's exactly right. And I think that's exactly why the district court should have discretion, being closest to those facts, understanding the real posture of the case. All right, I'm going to ask my colleagues if we have any further questions of you. We have no further questions of you, sir. Thank you, Your Honor. All right. Mr. Blankenship? Do you have anything further to add? I guess I do, Your Honor. Come right on up. I would like to bring up an update that I think goes right into the point of, is this a Virginia case or is this a Texas case? I'm not sure that there's a compelling reason that I can think of why this is a Texas case rather than a Virginia case. For example, when the Texas court tried to bring in Cass, you notice that the Colorado Association of Ski Towns was originally a party in the Texas case. They no longer are. How can a Colorado Association of Ski Towns that are just enforcing taxation, and not against any particular party, it's not as though this is a home-away investigation. This is a taxation investigation. We moved to dismiss them, and they're out of the case now. So an update, Colorado Association of Ski Towns is no longer a party in the Texas case. But doesn't that actually underscore how easy it is to add a party or a claim and later dismiss them? Not that you did that, or anybody else did that, but to allow then that kind of manipulation to affect the analysis that you would have to follow under some hard and fast rule. That makes the point, doesn't it? Well, I think Brillhart includes an analysis. But doesn't that make the point? Yes. And I think Brillhart includes an analysis where you don't just count parties on each side. And then it's worked its way to the Brillhart rule of analysis where you don't just count parties on each side. I know that you count parties on each side. That sounds more like a mechanical rule. It sounds a little bit more like what maybe you were urging. Well, if there is a mechanical rule that we're seeking, I'm not saying necessarily that there is, but if there was a mechanical rule, it's that the declaratory judgment statute should be applied only to declaratory judgments. The declaratory judgment statute gives district courts considerably more discretion over declaratory judgment claims than non-declaratory claims. And I'd like to touch on the point that His Honor Judge Wilkinson made just at the end of the previous discussion. Well, in Texas, they're not bringing CFAA claims and copyright claims, so why do we want a ruling like that? Well, the ruling, the purpose of the declaratory judgment, the real tool and the reason that it's a tool for litigants is that this is for customers. This is for clients. And as this sits and has stayed, we have fearful clients that are wondering whether or not they are subject, whether they are copyright infringers, whether they are in violation of the Computer Fraud and Abuse Act. Well, there you get into a whole other question, which is whether the utility of declaratory judgments in criminal cases and declaring whether somebody is not guilty of a criminal violation, and the question there is whether you preempt the whole criminal justice system and the prosecutor's role. So that, to go down there, that's a whole other ball of wax. But that case in controversy point was not brought up in the lower court. That's not really an issue that I think we're hearing. But this would meet a case in controversy requirement because they'd send out the cease and desist letter specifically stating that our investigation was a violation of the CFAA and the copyrights. The more I listen to this, the more I'm beginning to appreciate the prudence in Judge O'Grady's decision. And I would like to revisit Riley, if I could. Riley was a case that only involved declaratory claims but asked for damages as part of relief. There was this dependent standard in it of when you ask for declaratory relief and as part of that declaratory relief, you ask for damages. Well, we're going to treat it like it's declaratory relief because that's just part of the further necessary and proper nature that trial courts are imbued with in fashioning relief. But this isn't the case here. Our damages claims are not linked to declaratory judgment. We are asking for damages as relief that are linked to non-declaratory claims. I understand that, but it still doesn't resolve the question of the overlap between the Texas case and this case. Well, there is overlap. But at the same time, trying this court in a Virginia court... We don't need to beat a dead horse anymore. We've been talking about this question. We've been known to do it before, but we're going to leave the horse alone today. Thank you, Your Honor, for your time. We thank you. We'll come down and re-counsel.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Allyson K. Duncan